SHERKAT TAZAMONI AUTO INTER-NASH, Plaintiff,

v.

HELLENIC LINES, LIMITED, Defendant.

No. 66 Civ. 3398.

United States District Court
S. D. New York.
Dec. 12, 1967.

Hill, Rivkins, Warburton, McGowan & Carey, New York City, for plaintiff.

Hill, Betts, Yamaoka, Freehill & Longcope, New York City, for defendant.

MANSFIELD, District Judge.

In this libel, which was commenced on October 17, 1966, by an Iranian corporation against a Greek corporation for damages arising out of a shipment of trucks and parts from New York to Iran via the S.S. Hellenic Pioneer in 1965, respondent moves to dismiss on grounds of *forum non conveniens*. The motion is granted on the conditions hereinafter specified.

The complaint, which contains three causes of action, was recently amended to assert admiralty jurisdiction after the originally-alleged diversity grounds proved to be non-existent. It alleges that on August 27, 1965, the merchandise was

delivered by libellant shipper in good order and condition to the respondent in New York for shipment to libellant in Khorramshahr, Iran. Upon oral argument counsel agreed that the shipment was made pursuant to a series of bills of lading issued by respondent, subject to the terms of the Carriage of Goods by Sea Act. The first cause of action claims $20,000 for damages and shortage on delivery of the goods to the libellant in Iran. The second and third causes of action each claim $450,000 damages for late delivery in Iran, allegedly in violation of respondent's guarantees and warranties as to the delivery date. Libellant contends that the late delivery resulted in losses to it in Iran by reason of increased interest and customs warehousing charges, legal and travel expenses, and failure to meet libellant's dates for delivery to customers in Iran.

 The question of whether or not to decline jurisdiction on grounds of *forum non conveniens* rests in the Court's sound discretion. The principal factors to be considered in exercising that discretion have been repeatedly defined. See Lauritzen v. Larsen, 345 U.S. 571, 583 et seq., 73 S.Ct. 921, 97 L.Ed. 1254 (1953); Canada Malting Co. v. Paterson Co., 285 U.S. 413, 52 S.Ct. 413, 76 L.Ed. 837 (1932); Conte v. Flota Mercente Del Estado, 277 F.2d 664 (2d Cir. 1960); Anglo-American Grain Co., Ltd. v. S/T MINA D'AMICO, 169 F. Supp. 908 (D.Va.1959). After weighing the facts in this case in accordance with the standards to be applied, the balance is in favor of declining jurisdiction, provided the respondent will consent (as it has already so advised) to jurisdiction in the courts of either Iran or Greece.

Libellant's principal place of business is in Iran and that of the respondent in Greece. No American interests are involved. Although the shipment originated in New York, the activities and contacts forming the basis of the lawsuit took place almost entirely in the Middle East, with the result that practically all of the proof is located there. New York's connection with the matter is minimal, arising out of the fact that the shipment was booked and originated here. Since the authenticity of the written shipment agreement is conceded and the bills of lading, which evidence the terms of the shipment and condition of the goods upon delivery to the carrier are not in dispute, the testimony of the shipping agent here in New York, if necessary at all, would be perfunctory and could be secured by deposition.

The core of the dispute between the parties lies in libellant's contention that the respondent failed to schedule the ship's arrival at Khorramshahr on September 24, 1965, as the second port of call and, instead, rerouted the ship to other ports in the Persian Gulf first, with the result that it did not arrive in Khorramshahr until October 18, 1965, the goods arriving in a damaged and short condition, thus causing a multiplicity of costs, expenses, and damages in Iran. Proof of these claims will necessitate the examination of Iranian and Greek witnesses and records on such questions as reasons for the ship's port movements in the Persian Gulf, the condition of the goods upon arrival in Iran, the existence of expenses, and the loss of customers in Iran. Most of the witnesses, in addition to being located in Iran, which is 6,000 miles from this forum, probably do not speak English. The libellant, with its main office in Iran would of course be able to conduct its own pretrial examination of these records and witnesses in Iran with a minimum of expense to itself and then bring to the trial the evidence relied upon by it, whereas such a procedure would put respondent's counsel here and its principal office in Greece to much greater expense.

The libellant has not suggested that it would not receive a fair trial in Iran, which is its own home forum, or that it would suffer any serious delay or incon-

venience by institution of suit in Iran. The respondent has offered to accept the jurisdiction of either Iran or Greece and waive any defenses based on laches or statutory time bars. No testimony has as yet been taken by either party.

■ If the parties are entitled to have the law of the United States applied with regard to certain issues, the Iranian courts will, it must be assumed, give effect to it. Canada Malting Co. v. Paterson Co., 285 U.S. 413, 424, 52 S.Ct. 413, 76 L.Ed. 837 (1932). Furthermore, Iranian court processes and law would probably have to be invoked by the parties in any event to conduct the essential pretrial investigation in Iran.

This case is sufficiently similar to the recent decision of the Second Circuit Court of Appeals in Garis v. Compania Martima San Basilio, S. A., 386 F.2d 155 (2d Cir. Nov. 28, 1967) so as to lead this Court to the conclusions not only that jurisdiction in the present case should be declined, but also that retention of jurisdiction could result in gross unfairness to the respondent. Accordingly in the exercise of the Court's discretion, respondent's motion to dismiss on grounds of *forum non conveniens* is granted on the following conditions:

(1) That respondent will submit to the jurisdiction of the courts in Iran or Greece over the dispute without asserting any defenses based on laches or statutory time bars, provided such jurisdiction is promptly invoked by libellant;

(2) That respondent will consent to the taking of the deposition of its Traffic Manager in New York and of such other witnesses as libellant seeks to depose here with respect to the shipment and condition of the cargo in dispute, on the understanding that any such depositions may be used by either side in any proceeding instituted with respect to the subject matter in Iran or Greece.

So ordered.